## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TIMOTHY JUAIRE d/b/a
AT SERVICES,

       Plaintiff,

vs.                                                     No. CIV 12-1284 JB/KBM

T-MOBILE WEST, LLC, a Delaware
limited liability corporation, and
T-MOBILE USA, INC., d/b/a/
T-MOBILE WEST CORPORATION,
a Delaware corporation,

       Defendants.

### MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Defendants' Motion to Transfer Venue,

filed December 17, 2012 (Doc. 9)("Motion").  The Court held a hearing on February 7, 2013.

The primary issues are: (i) whether the Court should dismiss the case for improper venue, and

(ii) whether the Court should transfer the case to the United States District Court for the Western

District of Washington.  Both issues hinge on the interpretation of a forum selection clause.

Under the United States Court of Appeals for the Tenth Circuit's decisions, the forum selection

clause places venue in the state courts of the State of Washington.  The Court may not, of course,

transfer this case to such a court.  The Court will, therefore, deny the Motion and dismiss the

case.

---

[1] The Court entered an Order, filed September 24, 2013 (Doc. 24), denying the Defendants' Motion to Transfer Venue, filed December 17, 2012 (Doc. 9), and stating: "The Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion and Amended Order contains the promised opinion; it amends the Order to grant the Defendants' request -- as stated in Letter from Defendants T-Mobile West, LLC and T-Mobile USA, Inc. (dated October 1, 2013), filed October 1, 2013 (Doc. 27) -- that the Court dismiss the case.

## FACTUAL BACKGROUND

This case arises from a contract dispute between Plaintiff Timothy Juaire, and Defendants T-Mobile West, LLC and T-Mobile USA, Inc. (collectively, "T-Mobile").  In brief, Juaire alleges that he entered into a written contract with T-Mobile under which Juaire would provide maintenance services for T-Mobile's Albuquerque call center, that the parties later "verbally" modified the written contract on terms favorable to Juaire, and that T-Mobile and its agents breached the "verbal" agreement.  Complaint for Damages ¶¶ 3-9, at 1-2, filed in state court on October 24, 2012, filed in federal court on December 11, 2012 (Doc. 1-2)("Complaint").  The written maintenance contract, more formally called a Facility Services Agreement, contains the following provision:

> 16.    GOVERNING LAW: The laws of the State of Washington shall govern the construction and interpretation of this Agreement, without regard to the conflict of laws or choice of law provisions thereof.  Venue in any action brought with respect to this Agreement shall be in King County, Washington, and each party consents to the jurisdiction of the courts sitting therein.

Facility Services Agreement at 5, filed December 17, 2012 (Doc. 90-1)("Agreement"); Declaration of Jeff Bone ¶ 2, at 1 (executed December 13, 2012), filed December 17, 2012 (Doc. 90-1).

## PROCEDURAL BACKGROUND

In its Motion, T-Mobile argues that the Agreement's forum selection clause is mandatory, and that the Court should, therefore, transfer this case to the Western District of Washington.  See Motion at 1-2.  It points out that Juaire has not challenged the clause's validity; indeed, in their view, "Plaintiff's allegation of breach of contract presupposes the existence of a valid contract and Plaintiff has not alleged that the [Agreement] was procured by fraud."  Motion at 4.

- 2 -

Further, T-Mobile asserts that there is no reason to believe the Western District of Washington would unfairly or ineffectively address Juaire's claims, given its comparatively greater familiarity with Washington law than the Court.  See Motion at 4.  T-Mobile also contends that, while litigating in Washington may inconvenience Juaire, litigating in New Mexico would likewise inconvenience T-Mobile, and that the forum selection clause addresses that relative inconvenience.  See Motion at 4-5.  Finally, T-Mobile argues that the clause is clear and unequivocal, citing its language that venue in actions the clause governs "shall be in King County[.]"  Motion at 6 (emphasis in original).  In sum, in their view, because "[d]enying transfer would require this Court to essentially ignore the forum selection clause agreed to by the parties," the Court should transfer this case to the Western District of Washington.  Motion at 6.

In Juaire's Response to Motion to Transfer Venue, filed January 7, 2013 (Doc. 14)("Response"), Juaire raises three basic arguments.  First, Juaire argues that the clause governs only disputes arising under the Agreement, and that this dispute arises under an oral modification of the Agreement and not under the Agreement itself.  See Response at 1.  According to Juaire, the oral agreement and the parties' practices substantially differed from the terms of the Agreement: the oral agreement effectively set a floor for Juaire's compensation that did not appear in the Agreement and eliminated the off-hour rate increases which the Agreement contemplates, and the parties did not comply with the Agreement's requirement that the buyer submit a completed job ticket to the seller before payment would issue.  See Response at 2.  Juaire asserts that this litigation springs from T-Mobile's subsequent decision not to abide by that oral agreement and to terminate his employment.  See Response at 2.  In his view,

> [t]he only similarity between the two agreements was the type of services
> provided and the location where the services were provided.  The scale of pay was

different, the hours were different, the terminability of the contract was different,
the duration was different, the method of payment was different, and the ability to
make up hours was different.

Response at 5.  Juaire contends that language in T-Mobile's termination letter "tacitly recognized

the 30 day prior written notice requirement," and that "[t]he obvious inference from this is that

T-Mobile was aware that it had an agreement on its hands that was outside the ordinary course

and that extra-contractual means needed to be used to terminate it."  Response at 6.   In his view,

"T-Mobile cannot enter into a verbal contract with Plaintiff which differs materially from the

contract with which it intentionally parted ways and then rely on terms within the contract when

it benefits them, particularly when T-Mobile breached the termination provision of that same

written contract."  Response at 6.  Further, Juaire argues that, under the general principles of

contract law requiring a meeting of the parties' minds and that a contract must contain

sufficiently definite terms that a court could enforce it, there is no evidence that the parties

intended the Agreement's forum selection clause to bind them.  See Response at 7.

Second, Juaire contends that the clause is permissive, and not exclusive.  See Response at

1.  In his view, the Tenth Circuit will find a clause to be exclusive only if there is "exclusivity

language such as 'exclusive', 'sole' or 'only,'" and "[t]he use of the world 'shall' in ¶ 16 is not

language of exclusivity."  Response at 3.   Juaire also argues that the language is ambiguous,

because it does not state whether the appropriate court is a Washington state court or a federal

district court in King County.  See Response at 3-4.  In Juaire's view, the Court should interpret

this ambiguity against T-Mobile, which drafted the Agreement, and hold that T-Mobile

effectively waived its right to remove the dispute to federal court.  See Response at 4.  Further,

Juaire cites the United States Court of Appeals for the Ninth Circuit's decision in Hunt Wesson

- 4 -

Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1975), in which the court found that a clause containing the word "shall" indicated only that jurisdiction was proper in the courts which the clause referenced -- not that those courts were the exclusive forum for litigation.  See Response at 4.  Juaire also contends that the clause "fails to address the issue of sovereignty" and that it thus cannot satisfy the Tenth Circuit's standard in American Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921 (10th Cir. 2005).  Juaire, therefore, argues that the Agreement's forum selection clause is nonexclusive.

Third, Juaire argues that enforcing the clause would be unlawfully prejudicial to him. See Response at 1.  Juaire points out that the witnesses all live in New Mexico and that no witnesses live in King County.  See Response at 8.  Juaire, at least initially, concedes that he does not allege that T-Mobile obtained the Agreement through fraud, duress, or other unconscionable means, but argues that this factor is irrelevant, because he does not seek to enforce the Agreement, but rather seeks to enforce the alleged oral modification of the Agreement.  See Response at 8.  Juaire further alleges that T-Mobile instructed him to ignore the Agreement when he signed it, and that, by trying to enforce a provision that T-Mobile expressly instructed him to ignore, T-Mobile's conduct "ventures into the area of unconscionability[.]" Response at 8.  Juaire also suggests that T-Mobile's argument that, because the parties agreed to litigate in Washington, it is not an inconvenient forum, assumes that the parties chose to litigate in Washington when they entered into the oral modification of the Agreement.  See Response at 8.  Further, Juaire repeats his assertion that the witnesses are outside of the Washington courts' subpoena power, and argues that the Court can ably apply Washington law.  See Response at 9. Juaire argues that, given these circumstances, he would suffer great inconvenience if forced to

litigate this case in Washington and points out that T-Mobile has far greater financial resources than he does.  See Response at 8-9.

In its Reply in Support of Motion to Transfer Venue, filed January 25, 2013 (Doc. 16)("Reply"), T-Mobile responds to each of Juaire's three principal arguments.  First, T-Mobile contends that the forum selection clause is mandatory.  Reply at 2.  In T-Mobile's view, the Tenth Circuit does not require the words "exclusive," "sole," or "only" to conclude that a clause is mandatory; instead, according to T-Mobile, the Tenth Circuit's decision in Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (10th Cir. 1992), indicates that  "shall" satisfies the Tenth Circuit's requirement of "mandatory or obligatory language," as expressed in American Soda LLP v. U.S. Filter Wastewater Grp., Inc. 428 F.3d at 926.  Response at 4-5.  According to T-Mobile's view of Tenth Circuit law, if a forum selection clause mentions jurisdiction, but does not mention venue, the clause is permissive.  See Response at 5.  "In short," in its view, "the Tenth Circuit makes a clear distinction between clauses that simply specify that the parties consent to the jurisdiction of a specific court (which are permissive) and clauses that specify venue accompanied by mandatory language (which are mandatory)."  Reply at 5.  T-Mobile contends that this distinction also renders Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1975), inapplicable, because the forum selection clause in that case did not specify venue, but only specified jurisdiction.  See Reply at 5 n.1.  T-Mobile cites numerous cases from the Court and other district courts consistent with this view.  See Reply at 5-6.  With respect to Juaire's argument that the clause is ambiguous, T-Mobile contends that "the clause simply mandates venue in either a state or federal court located within King County[.]"  Reply at 7 n.2 (emphasis in original).

- 6 -

Second, T-Mobile argues that the alleged oral modification is irrelevant, for four reasons:

(i) the [Agreement]  by its terms prevents any oral modifications, precisely so that a party like Plaintiff may not avoid its terms by alleging a subsequent oral agreement; (ii) the alleged oral modification is void under the statute of frauds; (iii) because the key issue in this litigation is whether the parties modified the [Agreement], this is "an action with respect to" the [Agreement] and thus within the scope of the forum selection clause; and (iv) even if a verbal modification occurred and was valid, the forum selection clause would still apply because the alleged terms of the modification are not inconsistent with that portion of the [Agreement].

Reply at 2.  With respect to the no-oral-modification clause, T-Mobile cites cases from other districts that have "denied attempts to evade this type of clause like those made here by confirming that any modifications of contracts containing such clauses must be in a writing signed by the parties."  Reply at 7.  With respect to the statute-of-frauds argument, T-Mobile argues that, because the "Plaintiff's Complaint states that the alleged verbal agreement he entered into with T-Mobile was to begin on January 1, 2010 and run until July 1, 2011," the parties could not perform the agreement within a year from its making, and that, therefore, the statute of frauds bars the agreement.  Reply at 8.  Further, T-Mobile asserts that the forum selection clause governs this case, because "the key issue in this litigation is whether the parties modified the [Agreement]."  Reply at 9.  Finally, T-Mobile asserts that, because this alleged oral modification "did not . . . indicate that the parties had allegedly agreed that the forum selection clause no longer applied," "the forum selection clause remains in force even if [Juaire's] claimed verbal modification actually occurred."  Reply at 9.

Third, T-Mobile contends that, even if these facts were relevant, they are false, and that they "are nothing more than a desperate attempt by Plaintiff to manufacture a reason for avoiding his express contractual agreement to litigate his dispute with T-Mobile in Washington State."

Reply at 2.  In T-Mobile's view, however inconvenient this litigation might be to Juaire, it is not sufficient to satisfy his "burden of affirmatively proving to the Court that any such inconvenience [is] 'so serious as to foreclose a remedy.'"  Reply at 9-10 (quoting Montoya v. Fin. Fed. Credit, Inc., 872 F. Supp. 2d 1251 (D.N.M. 2012)(Browning, J.)).  T-Mobile argues that, "[t]o satisfy this burden, Plaintiff must show, e.g., that he will be deprived of his day in court, or that the designated forum is a 'remote alien forum' chosen in bad faith."  Reply at 10.  T-Mobile states that Juaire has not made this showing: "For example, he does not claim the inability to travel to Washington or that he lacks the ability to hire a new attorney in Washington State to prosecute his claim.  For this reason alone, Plaintiff has failed to show that any inconvenience would foreclose a remedy."  Reply at 10.  Further, T-Mobile reiterates its argument that the forum selection clause is designed to address precisely the inconveniences Juaire identifies.  See Reply at 10.  T-Mobile argues that Juaire "ignores the fact that having litigation in Washington would in many respects be more convenient for T-Mobile," because, for example, "T-Mobile's in-house and outside counsel would not have to travel for court hearings or for trial."  Reply at 10-11.

At the hearing, the Court began by indicating it was inclined to find that the forum selection clause is mandatory, and that the Court must, therefore, transfer the case.  See Transcript of Hearing, taken February 7, 2013 ("Tr").[2]  T-Mobile opened by reiterating the principal arguments from its Motion and Reply.  Tr. at 4:3-6:9 (Bone).  T-Mobile added that two cases it did not cite, see Huffington v. T.C. Grp., LLC, 685 F. Supp. 2d 239 (D. Mass. 2009), and MAR Marketing v. Kalapos, 620 F. Supp. 2d 295 (D. Conn. 2009), "taken together make clear

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that the language 'with respect to' is extremely broad."  Tr. at 6:18-7:2 (Bone).  In T-Mobile's view, "with respect to" is broader than "arising under," and that "with respect to" means "relating to" or "in relation to," which means "that the origin of the dispute has some logical or causal connection," and that, because the parties dispute whether they modified the Agreement, the dispute satisfies that standard.  Tr. at 7:3-12 (Bone).  Further, T-Mobile argues that the plaintiff in Knight Oil Tools, Inc. v. Unit Petroleum Co., No. CIV 05-0669 JB/ACT, 2005 WL 2313715 (D.N.M. Aug. 31, 2005)(Browning, J.), raised a similar oral-modification argument, and argued that the Court agreed only because the oral modifications were inconsistent with the forum selection clause, where the alleged oral modifications in this case are fully consistent with the forum selection clause.  See Tr. at 7:22-13 (Bone).

After some discussion about the corporate relationship between the T-Mobile entities, the Court asked what would happen if Juaire had brought both a claim the Agreement clearly covered and a claim the Agreement clearly did not cover: that is, whether the Court should transfer the Agreement claim and retain the non-Agreement claim, or whether the Court should transfer the entire case.  See Tr. at 8:17-10:23 (Court, Bone).  T-Mobile responded that the Court had the discretion to choose the most efficient option under the circumstances.  See Tr. at 10:24-11:15 (Bone).  The Court suggested that, in that situation, the Court might analyze the issue under the factors that inform transfer of venue under 28 U.S.C. § 1404(a); T-Mobile disagreed, and said the Court should transfer the Agreement claim, because venue before the Court would be improper, and that Juaire would then need to show that transferring the non-Agreement claim would foreclose a remedy.  See Tr. at 11:16-12:13 (Court, Bone).

T-Mobile concluded by substantially reiterating its argument that Juaire cannot satisfy his burden to show that the inconvenience of litigating in Washington is "so serious as to foreclose a remedy." Tr. at 12:16-15:10 (Bone).

Juaire began his response arguing that the Complaint focuses entirely on the "verbal agreement" and not on the Agreement; indeed, he pointed out, he did not attach the Agreement to the Complaint. See Tr. at 15:18-16:2 (Crowley). The Court asked Juaire a similar question to the hypothetical it posed to T-Mobile: what should the Court do with any remaining claims if it decides one claim concerns the Agreement and that it must transfer that claim? See Tr. at 18:8-17 (Court). Juaire suggested that the logistical and financial obstacles to litigating a case of this size in Washington might prevent him from pursuing his claims, but that he could not make an informed decision on that point until the Court issues its decision. See Tr. at 18:18-19:14 (Crowley, Court).

Juaire then turned to the question whether this clause is mandatory or permissive, and suggested that he could not reconcile American Soda v. U.S. Filter Wastewater Group with the Court's subsequent decisions. See Tr. at 19:24-20:20 (Crowley). Juaire underscored his view that, under American Soda v. U.S. Filter Wastewater Group, a clause must contain the words "exclusive," "sole," or "only" for courts to consider it mandatory, and argued that T-Mobile had not distinguished American Soda v. U.S. Filter Wastewater Group; the Court indicated that subsequent decisions eroded that position. See Tr. at 20:21-21:22:17 (Court, Crowley). Juaire further reiterated his view that this provision is less specific about jurisdiction than are the clauses in some other cases; he did not explain that distinction's significance. See Tr. at 22:20-23:21 (Crowley, Court).

The Court asked Juaire about the damages he anticipates in this case.  See Tr. at 25:8-11 (Court).  Juaire replied that he was surprised that T-Mobile had alleged that the amount in controversy exceeds $75,000 in its notice of removal, because he had calculated that his case was worth about $50,000.  See Tr. at 25:12-26:13 (Crowley, Court).  Given these low damages, in Juaire's view, it is not likely that he  could find a Washington attorney who would take the case. See Tr. at 26:2-13 (Crowley)

In reply, T-Mobile first argued, citing Mann v. Automobile Protection Corp., 777 F. Supp. 2d 1234 (D.N.M. 2011)(Martinez, J.), that a key concern for whether the dispute is related to the Agreement is whether the claims involve the same operative facts and require the fact finder to determine the Agreement's terms, and that this case satisfies that test.  See Tr. at 26:19-27:12 (Bone).  With respect to the interpretation of Tenth Circuit law regarding the distinction between mandatory and permissive forum selection clauses, T-Mobile argued that the Tenth Circuit requires exclusivity language only when the clause discusses jurisdiction, and that the clause is mandatory "when the parties specify a venue and accompany it with mandatory language." Tr. at 27:13-28:24 (Bone, Court).

T-Mobile then turned to the issue Juaire raised regarding whether the clause's language required a state forum or a federal forum.  See Tr. at 30:14-23 (Bone).  In T-Mobile's view, if a clause says "court of a state," the clause does not refer to federal court, because federal courts are not "of" a state; however, if "a clause refers to venue in a certain place, that's just [an issue] of geography." Tr. at 31:1-3.  T-Mobile argued that, because both King County Superior Court and the Western District of Washington are "in King County and sit[] therein," venue is proper in either court under the clause.  Tr. at 31:12-19 (Court, Bone).  T-Mobile submitted that the Court

should either transfer this case to the Western District of Washington or, if the Court concludes that the clause limits venue to state court, dismiss the case.  See Tr. at 31:19-25 (Bone).

T-Mobile also argued that there is no evidence in the record that Juaire could not find new counsel if the case proceeds in Washington.  See Tr. at 32:1-7 (Bone).  T-Mobile conceded that it would be more difficult for Juaire to litigate the case, but argued that this difficulty does not rise to the level of foreclosing a remedy.  See Tr. at 32:9-24 (Court, Bone).  T-Mobile also argued that the Court's cases do not conflict with the Tenth Circuit's cases on this question.  See Tr. at 32:25-33:25 (Court, Bone).

The Court indicated it would take the matter under advisement, and that its analysis would turn on whether the clause in the Agreement is mandatory and whether the claims asserted fall within it.  See Tr. at 34:1-18 (Court).  Upon questioning by the Court, Juaire clarified that there is no reason to think that the fact that he sued multiple T-Mobile entities is significant.  See Tr. at 34:19-36:21 (Court, Crowley).

On September 24, 2013, the Court entered a Minute Order directing the parties to address why the Court should not dismiss this case in light of the Tenth Circuit's decision in Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318 (10th Cir. 1997).  See Minute Order (Doc. 25).  That case interpreted a forum selection clause stating that "venue shall lie in the County of El Paso, Colorado."  106 F.3d at 320.  The Tenth Circuit explained:

> Keeping in mind the mandatory/permissive dichotomy, and giving the language of the clause its plain meaning, we conclude the clause is mandatory and requires that any breach of contract action be brought and litigated in the District Court of El Paso County, Colorado.  Although Sterling argues the clause can be reasonably interpreted to allow removal of the case to federal district court that sits in El Paso County, we reject this argument.  For federal court purposes, venue is not stated in terms of "counties."  Rather, it is stated in terms of "judicial districts."  See 28 U.S.C. § 1391.  Because the language of the clause refers only to a specific

county and not to a specific judicial district, we conclude venue is intended to lie
only in state district court.

106 F.3d at 321.

Juaire responded by Letter from Plaintiff Timothy Juaire to the Court (dated October 1,
2013), filed October 1, 2013 (Doc. 26)("Juaire Letter").  Juaire contends that the Court should
remand the case under the doctrine of contractual waiver of removal.  See Juaire Letter at 1.
Juaire argues that the Court should read Excell, Inc. v. Sterling Boiler & Mechanical, Inc. in
conjunction with the Tenth Circuit's earlier decision in Milk 'N' More, Inc. v. Beavert, 963 F.2d
1342 (10th Cir. 1992), and the United States Court of Appeals for the Fifth Circuit's decision in
Collin County v. Siemens Business Services, Inc., 250 F. App'x 45 (5th Cir. 2007).[3]  See Juaire
Letter at 1.  According to Juaire, "[i]n the latter case, the forum selection clause was mandatory
but chose a county that did not have a federal courthouse.  In such case, the forum selection
clause was deemed to be a waiver of removal."  Juaire Letter at 1.  Juaire argues that T-Mobile
chose King County, not a federal district court, and that T-Mobile thereby contractually waived
federal jurisdiction.  See Juaire Letter at 1.  The Court should, according to Juaire, remand the
case to its original jurisdiction in the Second Judicial District Court for the State of New Mexico,
and award him fees and costs.  See Juaire at 1.

T-Mobile also responded in a Letter from Defendants T-Mobile West, LLC and T-Mobile
USA, Inc. (dated October 1, 2013), filed October 1, 2013 (Doc. 27)("T-Mobile Letter").  Given

---

[3] Juaire provided the correct citation for Collin County v. Siemens Business Services,
Inc., but misnamed it "Truegreen [sic] Landcare, LLC v. TelFair Community Ass'n, Inc."  Juaire
Letter at 1.  Juaire appears to have inadvertently given a different case's name: TruGreen
Landcare, LLC v. Telfair Community Ass'n, No. H-12-514, 2013 WL 2147471 (S.D. Tex. May
14, 2013)(Harmon, J.).  Collin County v. Siemens Business Services, Inc. discusses contractual
waiver of federal jurisdiction, see 250 F. App'x at 50-52, and TruGreen Landcare, LLC v. Telfair
Community Ass'n cites that discussion.  2013 WL 2147471, at *1.

that the language in the clause in <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u> parallels the language in the Agreement, T-Mobile concedes that the Court should dismiss the case.  <u>See</u> T-Mobile Letter at 1.

## LAW REGARDING TRANSFER OF VENUE

"In 1948, Congress enacted the federal change-of-venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district."  <u>Whiting v. Hogan</u>, 855 F. Supp. 2d 1266 (D.N.M. 2012)(Browning, J.).  That statute provides, in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Section 1404(a) affords a district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness.  <u>See</u> <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1516 (10th Cir. 1991).  "Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) 'is intended to place discretion in the district court to adjudicate motions for transfer according to [a] . . . case-by-case consideration of convenience and fairness.'"  <u>Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.</u>, 626 F.3d 973, 977 (7th Cir. 2010)(quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)).  "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice."  <u>Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.</u>, 626 F.3d at 977.  The statute permits a "flexible and individualized analysis," and

affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 29.

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d at 1516 (internal quotation marks omitted).  See Tex. Gulf Sulfur v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)(stating the factors that the courts consider in making a venue determination under § 1404(a)).

"28 U.S.C. § 1406 permits transfer to cure a venue defect."  Whiting v. Hogan, 2012 WL 664805, at *14.  It provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406. Although both § 1404(a) and § 1406(a) "were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid."  Van Dusen v. Barrack, 376 U.S. 612, 634 (1964).

The "interest of justice" is a separate element of the transfer analysis that relates to the court system's efficient administration.  Van Dusen v. Barrack, 376 U.S. at 626-27.  "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each

community to the controversy." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,

626 F.3d at 977 (citations omitted).  In some circumstances, "[t]he interest of justice may be

determinative, warranting transfer or its denial even where the convenience of the parties and

witnesses points toward the opposite result." Research Automation, Inc. v. Schrader-Bridgeport

Int'l, Inc., 626 F.3d at 977 (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th

Cir. 1986)).  The Tenth Circuit has interpreted the phrase -- "if it is in the interest of justice" -- to

grant a district court discretion in making the decision to transfer the action. Driggers v. Clark,

422 F. App'x 747, 749-50 (10th Cir. 2011)(unpublished)(citing Trujillo v. Williams, 465 F.3d

1210, 1222 (10th Cir. 2006)).

## LAW REGARDING FORUM SELECTION CLAUSES

The Court has previously stated:

> Contrary to the general rule that a defendant's removal of the action from state
> court waives or cures any objection to improper venue in the federal court, an
> objection to the lack of proper venue based on a clause designating a court of
> another state or a foreign court as the exclusive forum is not waived or cured if
> the defendant removes the action from state court.

Knight Oil Tools, Inc. v. Unit Petroleum Co., 2005 WL 2313715, at *2 (citing 17 J. Moore,

Moore's Federal Practice §§ 111.04[3][d], 111.36[5][a], at 111-42 to 111-43, 111-179 (3d ed.

2004)).  Accord Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993)("[A] valid forum

selection clause operates to render venue improper, not only under 28 U.S.C. § 1391 [the general

venue statute] but also under 28 U.S.C. § 1441(a) [the removal statute].").  See also Int'l

Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 113-15 (5th Cir. 1996)(without discussing

removal issue, affirming dismissal on improper venue grounds of action removed from state

court when forum selection clause specified state courts of another state as exclusive forum);

Spradlin v. Lear Siegler Mgmt. Servs. Co., 926 F.2d 865, 866 (9th Cir. 1991)(without discussing removal issue, affirming dismissal of removed action on improper venue grounds based on clause making Saudi Arabia exclusive forum).

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d 494 (10th Cir. 2002)("K & V Scientific Co. v. BMW").  The Tenth Circuit has observed that "[f]orum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992)(quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972)).  Only a showing of inconvenience "so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice would be sufficient to defeat a contractual forum selection clause." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958.  Even if minor inconvenience would result, that would not justify non-enforcement of the forum selection clause.  See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 596-97 (1991).

1.    **Choice-of-Law Issues and Washington Law Regarding Forum Selection Clauses.**

In Stewart Organization v. Ricoh Corp., the Supreme Court of the United States held: "Federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum selection clause . . . ."  487 U.S. at 32.  That is, federal law

governs the <u>enforcement</u> of a forum selection clause.[4]  What law governs the <u>interpretation</u> of a forum selection clause, however, remains an open question.  Professors Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper explain:

> One question not resolved by the Supreme Court in the <u>Stewart</u> case that has perplexed the lower courts is whether to apply state or federal law when interpreting the forum selection clause to determine whether it is valid and mandatory.  It is clear that under the reasoning of <u>Stewart</u> a federal court cannot give blanket effect to a state's public policy against the enforcement of such clauses.  Yet, despite the curious appeal by some lower courts to the federal common law of contract construction, it seems that the interpretation and character of the contract must be governed by state law.

14D C. Wright, A. Miller & E. Cooper, <u>Federal Practice & Procedure: Jurisdiction</u> § 3803.1, at 131-32 (3d ed. 2007).  As Professors Wright, Miller, and Cooper acknowledge, the question remains open in the Tenth Circuit.  <u>See</u> 14D C. Wright, A. Miller & E. Cooper, <u>supra</u> § 3803.1, at 131-32 n. 92.  The Tenth Circuit has not drawn rigid distinctions between state and federal law when interpreting forum selection clauses, and has applied federal law when interpreting these clauses when "there are no material discrepancies between [state] law and federal common law on these matters."  <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>, 106 F.3d 318, 320-21 (10th Cir. 1997)(not deciding the choice-of-law issue between Colorado law and federal law).

---

[4] The Honorable Bruce Black, United States District Judge, provided a thorough analysis of the <u>Stewart Organization v. Ricoh Corp.</u> decision in <u>K & V Scientific Co. v. BMW</u>, 164 F. Supp. 2d 1260 (D.N.M. 2001), concluding: "The <u>Stewart</u> holding is therefore limited to those forum selection clauses which provide for transfer to a different federal forum: the case is inapplicable to forum selection clauses designating venue in a state or foreign court."  164 F. Supp. 2d at 1265.  The Tenth Circuit did not address this analysis on appeal.  <u>See</u> <u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 497 n.4.  In their discussion of <u>Stewart Organization v. Ricoh Corp.</u>, Professors Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper agree that "Section 1404(a) governs the dispute only if the forum selection clause permits venue in another federal district[.]"  14D C. Wright, A. Miller & E. Cooper, <u>Federal Practice & Procedure: Jurisdiction</u> § 3803.1, at 75 (3d ed. 2007).

Washington law, which governs "the construction and interpretation" of the Agreement in this case, draws heavily from federal law in interpreting forum selection clauses.  Under Washington law, "[f]orum selection clauses are prima facie valid."  Dix v. ICT Grp., Inc., 161 P.3d 1016 (Wash. 2007).  The Washington Supreme Court has adopted as its own standard the following synthesis of the Supreme Court of the United States' decisions in M/S Bremen v. Zapata Off-Shore and Carnival Cruise Lines, Inc. v. Shute:

> (1) [A] forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable, (2) a court may deny enforcement of such a clause upon a clear showing that, in the particular circumstance, enforcement would be unreasonable, and (3) the clause may be found to be unreasonable if (i) it was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the State where the action is filed.

Dix v. ICT Grp., Inc., 161 P.3d at 1020, 1021 (quotation omitted)(alteration in original).  Further, "[i]n assessing a forum selection clause for enforceability, [a Washington court] does not accept the pleadings as true.  Rather, the challenging party must present evidence to justify nonenforcement." Dix v. ICT Grp., Inc., 161 P.3d at 1021.

**2.     Enforceability of Forum Selection Clauses.**

The Supreme Court has noted that there is substantial overlap between precedent interpreting the enforceability of arbitration agreements and forum selection clauses.  See Scherk v. Alberto-Culver Co., 417 U.S. 506, 518-19 (1974)("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute[.]").  The Supreme Court has stated that "an arbitration or forum-selection clause in a contract is not enforceable if

the inclusion of that clause in the contract was the product of fraud or coercion." Scherk v. Alberto-Culver Co., 417 U.S. at 518-19 (emphasis added). Reiterating this rule, the Tenth Circuit has stated: "A plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision; the teachings of Scherk, interpreting M/S Bremen, require no less." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960. Thus, the Tenth Circuit requires that a party seeking to avoid a forum selection clause or arbitration provision produce evidence showing that the forum selection clause or arbitration provision was a product of fraud or coercion. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960 ("Third, at no time did Riley offer any evidence on the stipulated issues tending to show that the arbitration provision (or any other choice provision, for that matter) was a product of fraud or coercion." (emphasis in original)). The Honorable Lourdes A. Martinez, United States Magistrate Judge for the District of New Mexico, has similarly stated that "[a] general claim of fraud or misrepresentation concerning an entire contract does not affect the validity of a forum selection clause." Mann v. Auto. Protection Corp., 777 F. Supp. 2d 1234, 1240 (D.N.M. 2011)(Martinez, M.J.).

The Supreme Court has rejected the notion that the parties must specifically negotiate a forum selection clause for it to be enforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593 ("[W]e do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."). Accord Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 221 (5th Cir. 1998)(holding that a forum selection clause in an employment contract for a seaman was

enforceable even when the parties did not negotiate for the provision).   Judge Martinez has

similarly held:

> This argument also fails because unequal bargaining position and form contracts
> do not invalidate forum selection provisions.   The fact that Plaintiff is an
> individual and the contract was presented to him as a form contract does not
> invalidate the forum selection provision, and Plaintiff's belief that he could not
> negotiate or change the terms of the Agreement does not rise to the level of
> overreaching that would make it unreasonable or unfair to enforce the forum
> selection provision.

Mann v. Auto. Protection Corp., 777 F. Supp. 2d at 1240 (citations omitted)(citing Carnival

Cruise Lines, Inc. v. Shute, 499 U.S. at 593-94).

Courts have similarly imposed a high standard for negating a forum selection clause on

the basis that it is inconvenient.   The Tenth Circuit has, for instance, stated:

> Finally, in Carnival Cruise Lines, the Court relied on M/S Bremen in
> enforcing a domestic forum selection clause, despite inconvenience to the
> plaintiffs.   Only a showing of inconvenience so serious as to foreclose a remedy,
> perhaps coupled with a showing of bad faith, overreaching or lack of notice,
> would be sufficient to defeat a contractual forum selection clause.
>
> Riley suggests that enforcement of the choice of forum and law provisions
> is unreasonable because he effectively will be deprived of his day in court.   The
> basis underlying this contention is his perception that recovery will be more
> difficult under English law than under American law.   Riley will not be deprived
> of his day in court.   He may, though, have to structure his case differently than if
> proceeding in federal district court.   The fact that an international transaction may
> be subject to laws and remedies different or less favorable than those of the
> United States is not a valid basis to deny enforcement, provided that the law of the
> chosen forum is not inherently unfair.   English law does not preclude Riley from
> pursuing an action for fraud and we agree with the Defendants that the Lloyd's
> Act does not grant statutory immunity for such claims.   We have been shown
> nothing to suggest than an English court would not be fair, and in fact, our courts
> have long recognized that the courts of England are fair and neutral forums.
> Given the international nature of the insurance underwriting transaction, the
> parties' forum selection and choice of law provisions contained in the agreements
> should be given effect.

Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958 (citations omitted).   Judge

Martinez has similarly held that, "[t]o invalidate a forum selection provision for reasons of

inconvenience, however, a party must show that enforcement of the provision would cause an

inconvenience 'so serious as to foreclose a remedy.'"   Mann v. Auto. Protection Corp., 777 F.

Supp. 2d at 1240 (quoting Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958).

        The Washington Supreme Court has had little occasion to explore the facts that would

render a clause so unreasonable that it is unenforceable.   The Washington Court of Appeals

considered such a question in Bank of America, N.A. v. Miller, 708 Wash. App. 745,  33 P.3d 91

(Wash. App. 2001).   In Bank of Am., N.A. v. Miller, cattle farmers filed suit in Michigan against

"a leasing company headquartered in Washington and financed by Bank of America . . . for

failing to fully fund" the cattle farmers' lease.  708 Wash. App. at 746, 33 P.3d at 92.  The lease

contained a choice-of-law clause selecting Washington law and a forum selection clause

selecting Pierce County, Washington.   See 708 Wash. App. at 747, 33 P.3d at 92.   Bank of

America purchased the cattle farmers' lease from the leasing company; Bank of America

subsequently sued the cattle farmers in Washington, alleging default on the lease.   See 708

Wash. App. at 747, 33 P.3d at 92.   Reversing the trial court, the Washington Court of Appeals

concluded that the cattle farmers had not satisfied their "heavy burden of showing that trial in the

chosen forum would be so seriously inconvenient as to deprive the party of a meaningful day in

court."  708 Wash. App. at 748, 33 P.3d at 93.   The cattle farmers argued that

        a trial in Washington is seriously inconvenient because their witnesses live in
        Michigan and they have a lawsuit pending against [the leasing company] there.
        They also point out that [the leasing company] came to Michigan to negotiate and
        execute the lease and that both [the leasing company] and Bank of America
        appeared in Michigan when the [cattle farmers] sued [the leasing company] there.
        Bank of America counters that [the leasing company] had its principal place of

> business in Washington, the [cattle farmers] had notice of the forum selection
> clause, the [cattle farmers] have not named any witnesses, and the Bank's
> witnesses reside in Washington.

708 Wash. App. at 748, 33 P.3d at 93.  The Washington Court of Appeals agreed with Bank of

America, because: (i) the cattle farmers knew that litigating in Washington would be

inconvenient for them when they agreed to the clause; and (ii) the cattle farmers

> ha[d] not specified the witnesses they intend[ed] to call, the issues the witnesses
> would [have] testif[ied] about, the evidence they intend[ed] to offer, and why that
> evidence would not [have been] available in Washington.  Without more, the
> [cattle farmers did] not show[] that litigating in Washington is any more
> inconvenient now than it was when they signed the lease agreement.

708 Wash. App. at 749, 33 P.3d at 93.  The court, therefore, concluded that the cattle farmers did

not satisfy their burden to "set forth specific facts showing why litigating in Washington is so

seriously inconvenient as to deprive them of a meaningful day in court."  708 Wash. App. at 749,

33 P.3d at 93.

### 3.     Permissive and Mandatory Forum Selection Clauses.

"The difference between a mandatory and permissive forum selection clause is that

'[m]andatory forum selection clauses contain[] clear language showing that jurisdiction is

appropriate only in the designated forum.'"  Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.,

428 F.3d at 926 (10th Cir. 2005)(quoting Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d

318, 321(10th Cir. 1997)).  "In contrast, permissive forum selection clauses authorize jurisdiction

in a designated forum, but do not prohibit litigation elsewhere."  Am. Soda, LLP v. U.S. Filter

Wastewater Grp., Inc., 428 F.3d at 926-27 (internal quotation marks and citation omitted).  In K

& V Scientific Co. v. BMW, the Tenth Circuit adopted the majority rule for enforcing forum

selection clauses.  See 314 F.3d at 500.  Specifically, it concluded that, when venue is specified,

such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory. See K & V Scientific Co. v. BMW, 314 F.3d at 499.

In Milk 'N' More, Inc. v. Beavert, the Tenth Circuit held that the forum selection clause was mandatory and precluded removal of the case to federal court. See 963 F.2d at 1343. In that case, the defendant appealed an order remanding the breach-of-contract action to a Kansas state court. See 963 F.2d at 1343. The district court concluded that an enforceable forum selection clause in the agreement required the remand. The Tenth Circuit agreed and affirmed. See 963 F.2d at 1343. The clause in the Milk 'N' More, Inc. v. Beavert agreement provided: "The parties herein have mutually agreed that said lease and the purchase option agreement contained herein, where applicable, shall be governed by the laws of the State of Kansas and the parties further agree that venue shall be proper under this agreement in Johnson County, Kansas." 963 F.2d at 1343. The district court granted the motion to remand on the ground that the contractual agreement contained an enforceable forum selection clause, relying on the principle that forum selection clauses are "prima facie valid and should be enforced" unless shown to be unreasonable. 963 F.2d at 1344 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 10). On appeal, the defendant contended that the district judge erred in construing the clause as a mandatory agreement between the parties to resolve any dispute under the contract exclusively in the state court in Johnson County, Kansas; he said instead that the court should have construed the clause as merely a permissive designation on venue. See 963 F.2d at 1344. The defendant contended that the district court erroneously construed the contract language as an agreement making Johnson County, Kansas, the exclusive forum in which the parties could resolve disputes

that arose under the agreement.  See 963 F.2d at 1345.  The Tenth Circuit stated that the dispositive portion of the clause provided that "venue shall be proper under this agreement in Johnson County, Kansas."  963 F.2d at 1345-46.  The Tenth Circuit held: "We are persuaded that the district judge made the proper interpretation and correctly enforced the clause."  963 F.2d at 1346.

In Milk 'N' More, Inc. v. Beavert, the Tenth Circuit stated that it was mindful that a waiver of one's statutory right to be in federal court must be "clear and unequivocal."  963 F.2d at 1346 (quoting Regis Assocs. v. Rank Hotels (Mgmt.) Ltd., 894 F.2d 193, 195 (6th Cir. 1990)).  The Tenth Circuit acknowledged that, if there is ambiguity in the clause, the court should construe it against the drafter.  See 963 F.2d at 1346.  Nevertheless, the Tenth Circuit said "[s]uch clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  963 F.2d at 1346.  The Tenth Circuit stated that the provision that "venue shall be proper under this agreement in Johnson County, Kansas" was "reasonably clear and the wording strongly points to the state court of that county."  963 F.2d at 1346.  The Tenth Circuit said the use of the word "shall" generally indicates a mandatory intent unless a convincing argument to the contrary is made.  963 F.2d at 1346.  The Tenth Circuit cited with approval  Intermountain Systems, Inc. v. Edsall Construction Co., 575 F. Supp. 1195, 1198 (D. Colo. 1983), stating that the case was particularly persuasive because it involved a similar clause: "It is agreed for purposes of this agreement, venue shall be in Adams County, Colorado."  Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1346.  The district court in Intermountain Systems, Inc. v. Edsall Construction Co. held the venue clause's language was precise and mandatory.  See 575 F. Supp. at 1198.  The Tenth Circuit held that the district judge

in <u>Milk 'N' More, Inc. v. Beavert</u> had not committed any error in his interpretation of the agreement and the entry of his order of remand.  <u>See</u> 963 F.2d at 1346.

In <u>K & V Scientific Co. v. BMW</u>, the parties entered into a new agreement which, unlike their earlier agreement, contained a jurisdictional and choice-of-law provision that stated: "Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich.  All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany."  314 F.3d at 496.  The plaintiff filed suit, asserting various contract, tort, and statutory causes of action.  314 F.3d at 497.  The defendant removed the case to federal court, and moved to dismiss pursuant to rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue.  The district court granted the defendant's motion to dismiss for improper venue.  The district judge concluded that the forum selection clause contained in the second confidentiality agreement was "unambiguous and enforceable," and demonstrated "[t]he parties' intent to locate jurisdiction for this action solely in the courts of Munich."  314 F.3d at 497.  On appeal, the plaintiff argued that the clause's language contained no reference to venue, contained no language designating the courts in Munich as exclusive, and contained no language indicating that suit elsewhere is impermissible.  <u>See</u> 314 F.3d at 497.  The Tenth Circuit made the distinction between a venue provision which fixed venue in a certain location -- a mandatory clause -- versus one which merely granted jurisdiction to a certain place -- a permissive clause.  The Tenth Circuit set forth an analysis for determining whether forum selection clauses within a contract are mandatory or permissive:

> This court and others have "frequently classified" forum selection clauses "as either mandatory or permissive."  <u>Excell[, Inc. v. Sterling Boiler & Mech., Inc.],</u>

- 26 -

> 106 F.3d   [318,] 321 [(10th Cir. 1997)].   "Mandatory forum selection clauses
> contain clear language showing that jurisdiction is appropriate only in the
> designated forum."   Id. (internal quotations omitted).   "In contrast, permissive
> forum selection clauses authorize jurisdiction in a designated forum, but do not
> prohibit litigation elsewhere."   Id. (internal quotations omitted).

K & V Scientific Co. v. BMW, 314 F.3d at 498.   The Tenth Circuit cited Milk 'N' More, Inc. v. Beavert, stating that the Tenth Circuit there had concluded that a forum selection clause stating "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory.   K & V Scientific Co. v. BMW, 314 F.3d at 498.   The Tenth Circuit found, however, that no Tenth Circuit case had yet dealt with a forum selection clause similar to the one at issue.   314 F.3d at 498.

The Tenth Circuit stated that, "generally speaking," the Courts of Appeals are in "agreement" that the following formula is to be used in determining whether the selection clause is mandatory or permissive: "'[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.'"   K & V Scientific Co. v. BMW, 314 F.3d at 499 (alterations in original)(quoting Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992)).   The Tenth Circuit analyzed language from six forum selection clauses considered permissive, including four different forum selection clauses wherein the provision used the word "shall" together with the name of a court.   K & V Scientific Co. v. BMW, 314 F.3d at 499.   The K & V Scientific Co. v. BMW formula for the four clauses using the word "shall" and considered permissive were:

> * "Any dispute arising between the parties hereunder shall come within the
> jurisdiction of the competent Greek Courts, specifically of the Thessaloniki

- 27 -

Courts." <u>John Boutari [& Son, Wines & Spirits, S.A. v. Attiki Imp. & Distribs.
Inc.</u>], 22 F.3d [51,] 52 [(2d Cir. 1994)].

. . . .

* "The courts of California, County of Orange, shall have jurisdiction over the
parties in any action at law relating to the subject matter or the interpretation of
this contract." <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>, 817 F.2d 75, 76 (9th
Cir. 1987).

. . . .

* "This agreement shall be construed and enforceable according to the law of the
State of New York and the parties submit to the jurisdiction of the courts of New
York."   <u>Keaty [v. Freeport Indon., Inc.</u>], 503 F.2d [955,] 956 [(5th Cir. 1974)]
(concluding phrase was ambiguous and, when construed against drafter, was
permissive).

* "This agreement shall be governed by and construed in accordance with the
laws of the Federal Republic of Germany. * * *  Place of jurisdiction shall be
Dresden." <u>Hull 753 Corp. v. Elbe Flugzeugwerke GmbH</u>, 58 F. Supp. 2d 925, 926
(N.D. Ill. 1999).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 499.  The other two examples of permissive clauses

were:

* "The laws and courts of Zurich are applicable."   <u>Caldas & Sons, Inc. v.
Willingham</u>, 17 F.3d 123, 127 (5th Cir. 1994).

. . . .

* "Place of jurisdiction is Sao Paulo/Brazil."   <u>Citro Florida[, Inc. v. Citrovale,
S.A.</u>], 760 F.2d 1231, 1231 (11th Cir. 1985)(concluding phrase was ambiguous
and, when construed against drafter, was permissive).

<u>K & V Scientific Co. v. BMW</u>, 314 F.3d at 499.  The Tenth Circuit in <u>K & V Scientific Co. v.

BMW</u> also noted that the courts had held the following clauses to be mandatory:

* "[P]lace of jurisdiction . . . is the registered office of the trustee [in Germany], to
the extent permissible under the law."  <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 827
(7th Cir. 1995); <u>see</u> <u>id</u>. at 829 (concluding that the phrase "to the extent
permissible under the law" "would have no function if the [forum selection]

- 28 -

clause were not mandatory -- if, in other words, a party could sue anywhere he wanted").

* "In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . .  The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business."  Paper Express[, Ltd. v. Pfankuch Maschinen GmbH], 972 F.2d at 755; id. at 756 (concluding the last sentence "would be appropriate and meaningful only if the clause were in fact mandatory").

* "Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia.  Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia."   Docksider[, Ltd. v. Sea Tech., Ltd.,] 875 F.2d [762,] 763 (9th Cir.1989).

K & V Scientific Co. v. BMW, 314 F.3d at 499-500 (footnote omitted).

Using the majority rule, the Tenth Circuit had little trouble concluding that the forum selection clause at issue in K & V Scientific Co. v. BMW was permissive.  See 314 F.3d at 500. The clause referred only to jurisdiction and did so in non-exclusive terms.  See 314 F.3d at 500. A clause is mandatory, in accordance with K & V Scientific Co. v. BMW, only when the venue is specific with mandatory language.  See 314 F.3d at 500.  Mandatory language is venue coupled with such terms as "exclusive," "sole," or "only."  314 F.3d at 500.  If the paragraph is ambiguous -- capable of being construed as either permissive or mandatory -- the paragraph is deemed to be permissive.  314 F.3d at 500.  The Tenth Circuit in K & V Scientific Co. v. BMW stated:

> Even if the clause were deemed to be ambiguous (i.e., capable of being construed as either permissive or mandatory), the rule in this circuit and others is that the clause must be construed against the drafter, in this case defendant.  See Milk 'N' More, 963 F.2d at 1346 (holding "if there is any ambiguity in the clause [the court] should construe it against the drafter").  Accordingly, the clause would be deemed permissive.

- 29 -

314 F.3d at 500-01 (citations omitted).

In an unpublished decision that followed K & V Scientific Co. v. BMW, the Tenth

Circuit clarified that K & V Scientific Co. v. BMW decision addresses the issue

> whether a recognition-of-jurisdiction provision implies an exclusive selection of
> venue.  Use of mandatory language like "shall" in a clause dealing directly with
> venue carries stronger implications regarding the intent to designate an exclusive
> forum.  See Milk 'N' More, 963 F.2d at 1346 (holding clause stating that "venue
> shall be proper . . . in" effected an exclusive designation of forum).  When, as
> here, the relation of such language to the question of venue is at most derivative,
> through a jurisdictional provision, decisions such as "Milk 'N' More . . . are of
> little assistance in resolving the . . . dispute."  K & V Scientific, 314 F.3d at 498-
> 99.

King v. PA Consulting Grp., Inc., 78 F. App'x 645, 648 n.2 (10th Cir.

2003)(unpublished)(emphasis in original).  The Tenth Circuit, in American Soda, LLP v. U.S.

Filter Wastewater Group, Inc., has also recognized that a party to a contract can waive venue in

federal court, thus requiring remand to state court of the dispute:

> The parties not only consented to the jurisdiction of the Colorado state courts,
> they went a step further by designating the state courts or arbitration as "the
> exclusive forum for the resolution of any disputes related to or arising out of [the
> contract]."  We conclude that by consenting to state court jurisdiction and
> selecting the state courts as the "exclusive forum," the parties indicated their
> intent to make venue exclusive in state court with respect to any disputes not
> resolved in arbitration.  Because the forum selection clause at issue is mandatory,
> U.S. Filter unequivocally waived its right to remove this lawsuit to federal court.

428 F.3d at 927.

## WASHINGTON LAW REGARDING CONTRACT INTERPRETATION

"'The cardinal rule with which all interpretation begins is that its purpose is to ascertain

the intention of the parties.'"  Berg v. Hudesman, 115 Wash. 2d 657, 663, 801 P.2d 222, 226

(Wash. 1990)(quoting Arthur L. Corbin, The Interpretation of Words and the Parol Evidence

- 30 -

Rule, 50 Cornell L. Quar. 161, 162 (1965)).  To this end, the Washington Supreme Court has adopted the "context rule," under which "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." Berg v. Hudesman, 115 Wash. 2d at 667, 801 P.2d at 228-29.  The Washington Supreme Court has adopted the following understanding of the context rule:

> May we say here that we are mindful of the general rule that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake.  But, as stated in Olsen v. Nichols, 86 Wash. 185, 139 P. 668 [(1915)], parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing.  Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed.  Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument.  It is the duty of the court to declare the meaning of what is written, and not what was intended to be written.  If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible.

Berg v. Hudesman, 115 Wash. 2d at 669, 801 P.2d at 229-30 (citing J.W. Seavy Hop Corp. v. Pollock, 20 Wash. 2d 337, 348-49, 147 P. 310, 316)(1994)).

"Whether a contract is[ ]ambiguous and the legal effect of a contract are, in general, questions of law."  Syrovy v. Alpine Res., Inc., 68 Wash. App. 35, 39, 841 P.2d 1279, 1281 (Wash. App. 1992).  As one case explains,

> [i]n construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous.  Contract interpretation is only a question of law when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence. . . .

A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning. A provision, however, is not ambiguous merely because the parties suggest opposing meanings. [A]mbiguity will not be read into a contract where it can be reasonably avoided.

Mayer v. Pierce Cnty. Med. Bureau, Inc., 80 Wash. App. 416, 421, 909 P.2d 1323, 1326 (Wash. App. 1995)(internal citations and quotation marks omitted).

## NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION

In contract cases, "the role of the court is to give effect to the intention of the contracting parties." Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184. "The primary objective in construing a contract is not to label it with specific definitions or to look at form above substance, but to ascertain and enforce the intent of the parties as shown by the contents of the instrument." Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22 (citing Shaeffer v. Kelton, 1980-NMSC-117, 95 N.M. 182, 185, 619 P.2d 1226, 1229). "The parol evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing.'" Memorial Med. Ctr., Inc. v. Tatsch Const., Inc., 2000-NMSC-030, ¶ 16, 129 N.M. 677, 12 P.3d 431 (citation omitted). On the other hand, New Mexico has "adopted the contextual approach to contract interpretation, in recognition of the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." Mark V, Inc. v. Mellekas, 1993-NMSC-001, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (internal quotation marks and citation omitted). See Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0594 JB/RHS, 2013 WL 4446770, at *18 (D.N.M. Aug. 2, 2013)(Browning, J.).

"The question whether an agreement contains an ambiguity is a matter of law." Hartnett v. Papa John's Pizza USA, Inc., 912 F. Supp. 2d 1066, 1092 (D.N.M. 2012)(Browning, J.). See

Mark V., Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citing Levenson v. Mobley, 1987-NMSC-102, 106 N.M. 399, 401, 744 P.2d 174, 176).  When the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  A contract "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 (internal quotation marks omitted)(applying principle to insurance policy).  "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions.  The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity."  Vickers v. N. Am. Land Dev., Inc., 1980-NMSC-021, 94 N.M. 65, 68, 607 P.2d 603, 606 (citation omitted).

       "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citation omitted).  If the court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citing Vickers v. North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980)).

> [I]n determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance. . . .   It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions.
>
> . . . .

It may be that the evidence presented is so clear that no reasonable person would determine the issue before the court in any way but one.  In that case, to the extent the court decides the issue, the question then may be described as one of law.

C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, 112 N.M. 504, 508-10, 817 P.2d 238, 242-44 (affirming trial court because it "considered all evidence adduced in response to the motion for summary judgment, including collateral or extrinsic evidence of the circumstances surrounding the execution of the lease amendment, and quite properly found no ambiguity").  In addition, in determining whether an ambiguity exists,

> [a] court may employ the many rules of contract interpretation that do not depend on evidence extrinsic to the contract.  See, e.g., Smith v. Tinley, 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984) (reasonable interpretation of contract is favored); Schultz & Lindsay Constr. Co. v. State, 83 N.M. 534, 536, 494 P.2d 612, 614 (1972) (uncertainties construed strictly against drafter); Id. at 535, 494 P.2d at 613 (each part of contract is to be given significance according to its place in the contract so as to give effect to the intentions of the parties).

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5.  Once the Court finds that an ambiguity exists, the resolution of that ambiguity becomes a question of fact.  See Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  To decide the meaning of any ambiguous terms, "the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent."  Mark V, Inc. v. Mellekas, 114 N.M. at 782, 845 P.2d at 1236.  "[I]f the court finds ambiguity, the jury (or court as the fact finder in the absence of a jury) resolves the ambiguity as an issue of ultimate fact before deciding breach and damages."  C.R. Anthony Co. v. Loretto Mall Partners 112 N.M. at 507, 817 P.2d at 241.[5]

_____

[5] While New Mexico law does not apply, and the Court and the parties do not, therefore, have to worry about the implications of Mark V, Inc. v. Mellekas, it is worth noting that no party suggested that it wanted a Mark V, Inc. v. Mellekas hearing or that it had any evidence to present that would show there is an ambiguity.  Indeed, Mark V, Inc. v. Mellekas was not mentioned at

## ANALYSIS

The Court will dismiss the case for improper venue.[6]  The Court concludes that: (i) the

forum selection clause is not invalid as a result of fraud or overreaching; (ii) enforcing the forum

selection clause would not be so inconvenient to Juaire as to foreclose his remedy; (iii) the forum

selection clause is mandatory; and (iv) the forum selection clause covers all the causes of action

which Juaire has asserted against T-Mobile.  Under binding Tenth Circuit precedent, the Court

will dismiss the case.[7]

---

the hearing.  Juaire argues that the forum selection clause is "ambiguous" in one sense: in his view, the clause is not clear about whether venue properly lies in state court or in federal court. Properly understood, Juaire does not argue that the Agreement's language is ambiguous, but, rather, that its legal effect is unclear.  As this Memorandum Opinion explains, Excell, Inc. v. Sterling Boiler & Mech., Inc. resolves this apparent "ambiguity."  This case is not one where there are two reasonable interpretations or constructions, but one where the meaning is clear, and the issue is whether the provision is enforceable and, if so, how.

Moreover, there is no indication that Washington has any procedure as elaborate as Mark V, Inc. v. Mellekas to find or create an ambiguity; rather, the issue of contract construction is one for the courts.  See Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wash. 2d 829, 834, 271 P.3d 850, 852 (Wash. 2012)("[W]here facts are undisputed and there is no extrinsic evidence presented on the issue, the meaning of a contract may be decided as a matter of law.").  The Court concludes that the contract is unambiguous.

[6] Despite that the Agreement includes a choice-of-law clause selecting Washington law, the parties have argued this case entirely under federal law.  They have not addressed the effect of the Agreement's choice-of-law clause; indeed, they did not cite a Washington decision.  The Tenth Circuit has recognized that a choice-of-law agreement applies to the interpretation of a forum selection clause.  See Yavuz v. 61 MM, Ltd., 465 F.3d 418, 427-28 (10th Cir. 2006)("We see no particular reason, at least in the international context, why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.").  While this case is domestic, and not international, the Court concludes that this reasoning applies here as well.  The relatively few Washington cases regarding forum selection clauses, however, borrow heavily from federal law, and the Court cannot ascertain a difference between Washington and federal law that is relevant to this case.  Federal cases are, therefore, persuasive.

[7] There is no dispute that the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  The Agreement's forum selection clause does not oust the federal court of jurisdiction.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 12.  The forum selection

## I.   ENFORCING THE FORUM SELECTION CLAUSE IS NOT UNLAWFULLY PREJUDICIAL TO JUAIRE.

The Court concludes that enforcing the forum selection clause is not unlawfully prejudicial to Juaire.  Because Juaire has not alleged fraud with respect to the inclusion of the forum selection clause in the Agreement, it is not invalid as a result of fraud or overreaching.  Further, while it might be more expensive for Juaire to litigate in Washington, it is not so inconvenient that it forecloses his remedy.

### A.   THE FORUM SELECTION CLAUSE IS NOT INVALID AS A RESULT OF FRAUD OR OVERREACHING.

Although Juaire initially concedes that he does not allege that T-Mobile obtained the Agreement through fraud, duress, or other unconscionable means, he suggests that T-Mobile's conduct "venture[d] into the area of unconscionability," Response at 8, by instructing him to ignore the Agreement when he signed it, and later trying to enforce a provision of that Agreement.  Juaire neither elaborates nor cites authority for this proposition.  Treating this as an allegation of fraud or overreaching, the argument fails on its own terms.  The Tenth Circuit requires that "[a] plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision; the teachings of Scherk, interpreting M/S Bremen, require no less."  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960.  Further, the Tenth Circuit has explained that "a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances."  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958 (emphasis added).  Juaire's

_____

clause may divest some federal courts of venue, but not any federal court of subject-matter jurisdiction.

affidavit says only that T-Mobile's agents "stated that [Juaire] 'did not have to worry about the [Agreement]' and it 'was only a formality.'"   Affidavit of Timothy Juaire ¶ 1, at 1 (executed January 7, 2013), filed January 7, 2013 (Doc. 14-1).   Even assuming T-Mobile's agents said these things, T-Mobile's agents directed these statements at the Agreement as a whole and not at the forum selection clause in particular.   Because Juaire has not alleged fraud or overreaching with respect to the forum selection clause in particular, the forum selection clause is not invalid as a result of fraud or overreaching.

### B.    THE FORUM SELECTION CLAUSE IS NOT UNENFORCEABLE ON THE BASIS OF INCONVENIENCE.

The forum selection clause is not unenforceable on the basis that enforcing it will inconvenience Juaire.   The Tenth Circuit's standard in this area is high: "Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause."   Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958.   Juaire has made no such showing.   It may be true, as Juaire argues, that the witnesses all live in New Mexico and that no witnesses live in King County.   Nevertheless, the Court cannot reasonably conclude that requiring Juaire to litigate in Washington would foreclose his remedy.   Many communications in the modern legal world happen electronically or telephonically.   Many judges -- including the Court -- allow parties to appear telephonically or through other means.   Filing now takes place electronically in the federal court system through CM/ECF.   If he filed an affidavit here, he likely can file one in Washington.   Indeed, many of the few scattered cases declining to enforce a forum selection clause on inconvenience grounds were decided decades ago, before modern

technology changed the convenience calculus.  See, e.g., Borst v. Hi-Line Elec. Co., 698 F. Supp. 223 (S.D. Ala. 1988); Kolendo v. Jerell, Inc., 489 F. Supp. 983 (S.D. W. Va. 1980).  While some flights would likely need to occur for Juaire to properly litigate in Washington, as well as potentially the hiring of local counsel, those burdens do not foreclose him from pursuing a remedy.  Indeed, it seems unlikely that, in the twenty-first century, the courts will often find that litigation in the United States is so seriously inconvenient that the inconvenience forecloses a remedy.

Furthermore, the Supreme Court has recognized the legitimate business concerns a contracting party may have in limiting the potential forums in which plaintiffs may sue them:

> Furthermore, the Court of Appeals did not place in proper context this Court's statement in The Bremen that "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause."  The Court made this statement in evaluating a hypothetical "agreement between two Americans to resolve their essentially local disputes in a remote alien forum."  In the present case, Florida is not a "remote alien forum," nor -- given the fact that Mrs. Shute's accident occurred off the coast of Mexico -- is this dispute an essentially local one inherently more suited to resolution in the State of Washington than in Florida.  In light of these distinctions, and because respondents do not claim lack of notice of the forum clause, we conclude that they have not satisfied the "heavy burden of proof," required to set aside the clause on grounds of inconvenience.

Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 594 (citations omitted).  As T-Mobile argues, while litigating in Washington would be less convenient than litigating in New Mexico for Juaire, litigating in New Mexico would be less convenient than litigating in Washington for T-Mobile.  The forum selection clause's purpose is to balance those inconveniences.  Thus, by designating King County as the venue for lawsuits that Juaire intends to bring against it, T-Mobile is not choosing some "remote alien forum" to harass Juaire and discourage him from

bringing suit.  Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593-94.  That litigating in the forum Juaire chose in the Agreement is more expensive and troublesome than litigating in the forum he would prefer is not inconvenience so serious that it forecloses him from obtaining a remedy.

In many respects, Juaire's arguments suffer from the same flaws that were fatal to the cattle ranchers' arguments in Bank of America, N.A. v. Miller, 33 P.3d.  As in that case, Juaire knew (or should have known, given the Agreement's plain language) that litigating in Washington would be inconvenient for him when he agreed to the clause.  Further, Juaire has not specified the witnesses he plans to call, the issues the witnesses would testify about, the evidence he plans to offer, and why that evidence would not be available in Washington.  Without more, Juaire has not shown that litigating in Washington is any more inconvenient now than it was when he signed the Agreement.  Cf. Bank of Am., N.A. v. Miller, 33 P.3d at 93.  Juaire, therefore, has not satisfied his burden "to set forth specific facts showing why litigating in Washington is so seriously inconvenient as to deprive" him "of a meaningful day in court." Bank of Am., N.A. v. Miller, 33 P.3d at 93.  The Court concludes that Juaire has not made a showing of inconvenience so serious that it forecloses a remedy.

## II.   THE AGREEMENT INCLUDES A MANDATORY FORUM SELECTION CLAUSE THAT REQUIRES JUAIRE TO LITIGATE ANY MATTERS "WITH RESPECT TO THIS AGREEMENT" IN COURTS SITTING IN KING COUNTY.

The Court concludes that the Agreement's forum selection clause is mandatory.  Its language provides: "Venue in any action brought with respect to this Agreement shall be in King County, Washington, and each party consents to the jurisdiction of the courts sitting therein." Agreement at 5.  In K & V Scientific Co. v. BMW, the Tenth Circuit concluded that, when venue

is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory.  See 314 F.3d at 499.  The Agreement's inclusion of the word "shall," read in context, is clear mandatory language showing that venue is appropriate only in King County.

It is true, as Juaire contends, that this clause does not include the words "exclusive," "sole," or "only," and that American Soda, LLP v. U.S. Filter Wastewater Group listed those words as examples of language that could render a forum selection clause mandatory.  The list in that case, however, is illustrative and not exhaustive.  See Am. Soda, LLP v. U.S. Filter Wastewater Grp., 428 F.3d at 927.  American Soda, LLP v. U.S. Filter Wastewater Group does not, therefore, foreclose the Court's conclusion.  Further, as T-Mobile points out, the Ninth Circuit's holding in Hunt Wesson Foods, Inc. v. Supreme Oil Co. -- that a clause containing the word "shall" indicated only that jurisdiction was proper in those courts that he clause referenced, not that those courts were the exclusive forum for litigation -- does not apply, because the forum selection clause in that case did not specify venue, but specified only jurisdiction.  See Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d at 76.  Further, that Juaire signed the Agreement, see Agreement at 2, undermines Juaire's argument that there is no evidence that the parties intended the forum selection clause to bind them.  Accordingly, the Court concludes that the Agreement's forum selection clause is mandatory.

III.   **JUAIRE'S CLAIMS FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND MISREPRESENTATIONS BY OMISSION/PROMISSORY ESTOPPEL FALL UNDER THIS MANDATORY FORUM SELECTION CLAUSE.**

The Court concludes that the Agreement governs Juaire's claims.  It is true, as Juaire says, that his claims, taken at face value, deal only with an alleged oral modification to the Agreement.  This distinction is too facile.  The clause applies to actions brought "with respect to this Agreement."  Courts read the phrase "with respect to" broadly.  See, e.g., Coregis Ins. Co. v. Am. Health Foundation, Inc., 241 F.3d 123, 128-29 (2d Cir. 2001)(discussing the breadth of "with respect to," among similar phrases).  In re Weyerhaeuser Timber Co., 53 Wash. 2d 235, 238, 332 P.2d 947, 949 (Wash. 1958)(holding that, in a somewhat different context, "'[w]ith respect to' means with reference to, or relating to, according to Funk & Wagnalls [sic] standard English dictionary.").  With this language's breadth in mind, the Court concludes that this lawsuit is an "action . . . with respect to" the Agreement.  As T-Mobile points out, because the Agreement itself prohibits oral modification, a court can determine the modification's validity only "with reference to" the Agreement.  Reply at 2.  Further, as T-Mobile correctly states, "even if a verbal modification occurred and was valid, the forum selection clause would still apply because the alleged terms of the modification are not inconsistent with that portion of the [Agreement]."  Reply at 2.  The notion that the oral modification was a de facto novation lacks a sound basis in law.  Even if the parties had validly modified the Agreement, the District Court for the Western District of Oklahoma explained in a similar case:

> In this case, the parties orally agreed to modify the performance deadlines set out in the written Agreement, and there is no dispute that the modification was necessitated by the unexpected adverse weather conditions which delayed the work.  However, there is nothing in the record to suggest that the parties replaced

<u>all</u> provisions of the written Agreement[, including its forum selection clause,] by orally modifying specific terms regarding performance deadlines.

<u>Blackwell Enterprises, Inc. v. Henkels & McCoy, Inc.</u>, No. CIV–12–1242–D, 2013 WL 3771290 at *8 (W.D. Okla. July 16, 2013)(emphasis in original).  Finally, if the law permitted plaintiffs to escape adverse forum selection clauses by asserting that they had orally modified an unrelated portion of the contract, it would eviscerate many forum selection clauses.  The Court, therefore, concludes that this is "an action . . . with respect to" the Agreement.

## IV.    UNDER   TENTH   CIRCUIT   PRECEDENT   INTERPRETING   SIMILAR LANGUAGE, THE COURT WILL DISMISS THE CASE.

The Court concludes that it should dismiss this case in light of the Tenth Circuit's decision in <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>  That case interpreted a forum selection clause stating that "venue shall lie in the County of El Paso, Colorado."  106 F.3d at 320.  The Tenth Circuit explained:

> Keeping in mind the mandatory/permissive dichotomy, and giving the language of the clause its plain meaning, we conclude the clause is mandatory and requires that any breach of contract action be brought and litigated in the District Court of El Paso County, Colorado.  Although Sterling argues the clause can be reasonably interpreted to allow removal of the case to federal district court that sits in El Paso County, we reject this argument.  For federal court purposes, venue is not stated in terms of "counties."  Rather, it is stated in terms of "judicial districts."  <u>See</u> 28 U.S.C. § 1391.  Because the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court.

<u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>, 106 F.3d at 321.[8]

---

[8] This reasoning explains an anomaly the authors of <u>Federal Practice and Procedure</u> notice.  Professors Wright, Miller, and Cooper cite <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u> as an example of what they believe is a "common error[:] suggesti[ng] that there is still a dispute as to whether the enforcement of forum selection clauses in diversity cases presents a question of federal law or state law under the Erie doctrine."  14D C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> § 3803.1, at 106 & n.65.  The authors continue:

That reasoning applies in this case.  The Agreement states: "Venue in any action brought with respect to this Agreement shall be in King County, Washington, and each party consents to the jurisdiction of the courts sitting therein."  Agreement at 5.  Because the clause's language refers only to King County and not to a specific judicial district, venue lies only in state court.

Juaire's contractual-waiver argument for remand fails.  According to Juaire, the Fifth Circuit has held that, where "the forum selection clause was mandatory but chose a county that did not have a federal courthouse . . . the forum selection clause was deemed to be a waiver of removal."  Juaire Letter at 1.  Even if this unpublished opinion from another Circuit bound the Court, this argument fails for a simple reason: King County, of which Seattle is the county seat, includes a federal district court for the Western District of Washington.  See Seattle Courthouse, Western District of Washington | United States District Court (Oct. 23, 2013, 9:25 AM),  http://www.wawd.uscourts.gov/visitors/seattle-courthouse.   The Court will not, therefore, remand the case to New Mexico state court.

---

The Supreme Court in Stewart held that, when a Section 1404(a) analysis is possible, forum selection clause enforceability is a procedural matter wholly subject to federal law.  Nonetheless, some courts still appear to conclude that forum selection clauses create substantive rights properly governed by state law.  Most courts, however, correctly recognize that it is a matter of federal law.

14D C. Wright, A. Miller & E. Cooper, supra 3803.1, at 106-108 (footnotes omitted).  The trouble with citing Excell, Inc. v. Sterling Boiler & Mech., Inc., as an example of this flaw is that, because the Tenth Circuit held that the forum selection clause placed venue in state court, a Section 1404(a) analysis was unavailable.  In a subsequent supplement, the authors have acknowledged the division among the federal courts of appeals on this issue, and have cited Excell, Inc. v. Sterling Boiler & Mech., Inc. as explicating the Tenth Circuit's position that, "because for federal courts venue is stated in terms of 'judicial districts,' the use of the terminology of a specific county indicates that venue was intended to lie only in state courts."  14D C. Wright, A. Miller & E. Cooper, supra 3803.1, at 9 & n.91.6 (Supp. 2013).

The Court concludes that the Agreement's forum selection clause is mandatory, that Juaire's claims fall within its scope, and that Juaire has not shown that enforcement of the clause will bring about unlawful prejudice.   Under binding Tenth Circuit precedent, venue in this District is, therefore, improper.   Accordingly, the Court will dismiss the case without prejudice.[9]

**IT IS ORDERED** that: (i) the Defendants' Motion to Transfer Venue, filed December 17, 2012 (Doc. 9), is denied; and (ii) the case is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

---

[9] There is some division among the federal courts of appeals regarding the proper way to dispose of a case where, as here, venue is improper.   Professors Wright, Miller, and Cooper explain:

> When a valid forum selection clause mandates venue in a state or foreign court, Section 1404(a) has no application.   In these situations, there are two possible mechanisms available to the district court to enforce the clause -- dismiss or remand.   If the action was removed from a state court that was specified contractually to be the exclusive permissible venue for adjudication, then the district court should remand the case if it concludes that the clause should be enforced.   If the contract specifies some other state court or foreign forum for a removed action or if the action originated in federal court, a majority of the courts of appeal have held that the suit should be dismissed for improper venue if the clause is reasonable under the M/S Bremen decision.   This once again raises the issue of what procedural mechanism should be used to terminate the case.   Courts dismiss these actions under Section 1406 of Title 28, the common-law doctrine of forum non conveniens, Rule 12(b)(1), Rule 12(b)(3), and Rule 12(b)(6).   Some courts dismiss these actions without specifying a particular rule or statute.

14D C. Wright, A. Miller & E. Cooper, supra 3803.1, at 117-21 (footnotes omitted).   The Tenth Circuit appears to have endorsed dismissal under rule 12(b)(3) in K & V Scientific Co. v. BMW, and that decision binds the Court.

*Counsel:*

Clayton Ewing Crowley
Crowley & Gribble, P.C.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

--and--

Jeff Bone
Michael A. Moore
Corr, Cronin, Michelson, Baumgardner & Preece, LLC
Seattle, Washington

  *Attorneys for the Defendants*